James D. BURP, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–9211–CR–391.

Court of Appeals of Indiana,
First District.

April 13, 1993.

Thomas E. Hastings, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

James D. Burp appeals his conviction of operating a motor vehicle with a blood alcohol content by weight of .10 percent. Burp states the issue of this appeal to be whether the trial court erred in admitting into evidence, pursuant to the business record exception to the hearsay rule, medical records containing the results of a blood test performed on him during the early morning hours of May 25, 1991. However, Burp also challenges the sufficiency of the State's proof of the percent, by weight, of alcohol in his blood.

At the time the State sought admission of the results under the business records

exception, Burp objected on the ground that, whether or not the results were admissible under the hearsay rule, they still had to be shown to be competent evidence. To be competent and admissible, according to Burp, the State would need to show that "the test [had been] performed in a medically acceptable manner." (R. 185). Burp derives this requirement from Ind.Code 9–30–6–6(i) which states that "[t]he person authorized under this section to obtain a bodily substance sample *shall take the sample* in a medically accepted manner." (Emphasis supplied.) Burp also maintained that a foundational prerequisite to admission of the blood test results is testimony from the individual who obtained the sample and performed the test that hospital protocol for testing blood alcohol content was actually followed in the particular case. (R. 188).

 Burp voiced no objection on the ground that the State had failed to establish the chain of custody of the sample taken from him or that the person who performed and interpreted the tests was not properly qualified.[1] He did not and does not now contest the scientific theory upon which blood alcohol testing is based, the accuracy of such tests generally, or the test's reputation for reliability in the relevant scientific community.

In *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, *trans. denied*, the second district of this court held that a test report containing the results of red blood cell antigen and enzyme tests could be admitted pursuant to the business record exception to the hearsay rule. In that case, Wagers introduced the test report through the testimony of Dr. P. Michael Conneally, a professor of medical genetics and neurology and the supervisor of paternity testing at Riley Children's Hospital, who had interpreted data collected by a technician under his supervision but was not present when the tests were conducted. Baker argued, among other things, that because the technician who conducted the tests was not present at trial, the report constituted inadmissible hearsay. This court disagreed.

We explained in *Baker* that "trustworthiness and necessity were the parents of [the business record exception]." 472 N.E.2d at 220. "Reliability was found in the regular-

---

1. Having failed to object to the qualifications of Ms. Cosak, who obtained the sample from Burp, performed the test, and sponsored the exhibits, Burp may not now argue that Ms. Cosak's lack of appropriate training precludes her from testifying concerning the results of the test or renders the documents themselves inadmissible. On appeal, a party is restricted to claims within the scope of his proper objection. Any other objections are considered not properly made and preserved. *Chandler v. State* (1991), Ind., 581 N.E.2d 1233, 1237. Error if any in the admission of the documents without a proper showing of the chain of custody of the sample is also not preserved for review. *Id.*

Waiver notwithstanding, if these objections had been properly raised, the result would be the same. There is no hard and fast rule as to the quantum of knowledge required to qualify a witness as an expert in a given field. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095; *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149, 1152. The witness must be shown to be competent upon the subject concerning which she is to testify. *Id.* The extent of the witness' knowledge affects the weight of her testimony, not its admissibility. *Id.* A witness may be qualified by both training and practical experience. *King v. State* (1979), Ind.App., 397 N.E.2d 1260, 1270. Ms. Cosak testified that she had a bachelor of science degree in biology, had a government certification in laboratory testing and had on-the-job training during her eleven years as a laboratory technologist at the hospital. Ms. Cosak learned to take blood specimens "on the job." Ms. Cosak's qualifications are adequate to permit her to offer an opinion. Indiana Code 9–30–6–6, formerly I.C. 9–11–4–6, does not expressly or implicitly address the extent of training necessary to obtain bodily substances samples.

Likewise, Ms. Cosak testified that she remembered taking the blood sample from Burp. Although Ms. Cosak could not remember testing that particular sample, she remembered performing tests in the lab during the relevant time and the documentation prepared by her is circumstantial evidence that she did in fact perform the analysis on that date. Cosak was the only employee working in the lab that evening. She explained that pursuant to the hospital's protocol she would have both taken the sample and performed the tests. The State therefore has presented evidence from which it can reasonably be inferred that the sample obtained by Cosak from Burp remained in her possession from the time it was taken until it was tested. The State is not required to exclude every possibility of tampering. *Hayes v. State* (1987), Ind. App., 514 N.E.2d 332, 337, *trans. denied.*

ity and continuity of the record-keeping process" and in the commercial world's daily reliance upon the entries. The exception developed in part because the entrant could either not be found at the time of trial, "or, if found, would not remember the particular transaction." *Id.* The exception is a part of Indiana law.

Consequently, we clarified that to obtain admission pursuant to the business record exception, the proponent of an exhibit need only call an individual with a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction or declaration contained in the document, to authenticate the document. Hence, the test report in the *Baker* case could be admitted and interpreted through the testimony of Dr. Conneally, who had been qualified as an expert, even though he did not have personal knowledge of the steps performed by his technician and could testify only generally concerning the testing procedures used in the lab.

Burp contends that, regardless of the hearsay exception, some additional showing of reliability is required to gain admission of the results. He maintains that the witness sponsoring the exhibit must be able to state specifically that an established testing protocol was followed in the particular case. We rejected such a requirement in *Hayes v. State* (1987), Ind. App., 514 N.E.2d 332, 337, *trans. denied,* when it was couched as element of a blood sample's chain of custody.

Indiana law has routinely treated evidence of the results of scientific testing as a matter of scientific fact established by expert opinion. *See e.g., Hopkins v. State* (1991), Ind., 579 N.E.2d 1297; *Jones v. State* (1981), Ind., 425 N.E.2d 128, 130; *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149; *Montgomery Ward v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1158, *trans. denied. See generally, Orr v. State* (1984), Ind.App., 472 N.E.2d 627, *trans. denied,* and *Id.* (Sullivan, J. dissenting) (Elucidating path of Indiana law). We find at least three requirements for expert opinion testimony in the case law. First, the

witness' testimony must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average lay-person. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095. Second, the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness' opinion or inference will aid the trier of fact in the search for the truth. *Id.* And, third, the witness must have had sufficient facts or data upon which to validly form an opinion. *McDonald v. State* (1976), 265 Ind. 167, 172, 352 N.E.2d 708, 712.

Recently, in discussing what kind of showing was needed to gain admission of novel scientific evidence, the Indiana Supreme Court reaffirmed that a showing of expert qualification was necessary to gain admission of DNA test results but declined to impose as a distinct foundational requirement a showing "that the testing laboratory performed the accepted scientific techniques in analyzing the forensic samples in this particular case." *Hopkins,* 579 N.E.2d at 1304. The court held that once the trial court had ruled that a witness was qualified as a matter of law to give expert testimony regarding the particular form of scientific analysis, any subsequent evaluation of that evidence went to its weight as a matter of fact. Any conflict as to the reliability of the evidence is to be resolved by the trier of fact, whose finding will be upheld on review as long as the favorable evidence adequately supports it. *Id.*

However, the court then went on in *Hopkins* to conclude that the evidence was sufficient to support the trial court's factual findings that the testing had been "reliably performed in the case at bar according to generally accepted techniques." *Id.* The court's statement, that the reliability of the procedures employed in a particular case was a matter of weight not competency, became more than mere dicta in *Davidson v. State* (1991), Ind., 580 N.E.2d 238, 243, where the court held that in the absence of evidence of "substantial irregularities in procedure," the question of whether the testing lab performed the accepted techniques in the particular case was a

matter of fact for the trier of fact. This result is consistent with an earlier case, *Reid v. State*, 372 N.E.2d 1149, in which it was held that the fact scientific testing may be subject to error if not properly conducted did not provide a reason for rejecting evidence adduced thereby. "The persuasiveness of evidence produced by such a test is in large measure dependent upon the expertise of the witness who conducted it, which in the final analysis is to be determined by the jury." *Id.* 372 N.E.2d at 1152.

■ On this basis, we conclude that Ms. Cosak's recollection of the precise steps she took in obtaining the sample from Burp and analyzing it was not critical to the competency of the results she obtained or testimony concerning them. In the absence of some evidence suggesting a "substantial irregularity" in the process actually employed, *see e.g. State v. Alderson* (1982), Ind.App., 435 N.E.2d 614, the report could have been admitted through the testimony of a qualified person other than Ms. Cosak who would have had no personal knowledge of any of Ms. Cosak's actions. The trial court qualified Ms. Cosak to testify concerning her analysis of Burp's blood alcohol content. Ms. Cosak remembered taking a blood specimen from Burp and the documentary evidence generated by Ms. Cosak establishes that she obtained the sample at the time at issue; hence, the results of Ms. Cosak's analysis of Burp's blood serum have some tendency to prove Burp's blood alcohol content at the time of the alleged offense. *Shuman v. State* (1986), Ind.App., 489 N.E.2d 126, *trans. denied.* Ms. Cosak testified that she routinely followed the protocol established by a physician at the hospital where she was employed, identified the equipment used in the test, and generally explained the process, including the manner in which blood specimens are to be taken from the patient and the controls utilized to insure an accurate result. Ms. Cosak also testified that had she obtained an invalid result, it would not have been retained by the hospital. Under the cases we have cited, Ms. Cosak's

testimony is sufficient to permit the introduction of the three exhibits comprising the test results.

Burp argues that I.C. 9–30–6–6 imposes additional requirements for admission of chemical tests on bodily substances. Several appellate decisions have held that this statute refers only to the disclosure of blood test results, not the drawing and analysis of blood samples. *See e.g. Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11, 17. It does not create any rights in a criminal defendant but rather limits his right to invoke a privilege. *State v. Robbins* (1990), Ind.App., 549 N.E.2d 1107. The statute itself addresses admissibility in subsection (c)(2) only which provides that "samples, test results, and testimony may be admitted in a proceeding in accordance with the applicable rules of evidence." *But see Hopkins*, 579 N.E.2d 1297 (Stating in dicta that "the foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician").

■ Subsection (i) does provide that "[t]he person authorized under this section to obtain a bodily substance sample shall take the sample in a medically accepted manner." But, the results of a chemical test on bodily substances, other than one which is novel, would not be relied upon by the medical community if the sample were taken in a medically unacceptable manner. Hence, in the case of routine medical tests and in the absence of evidence showing a substantial irregularity in the procedure, the qualification of the witness as an expert and the foundation for the business record exception provides presumptive evidence of the accuracy and truthfulness of the entry and suffices, for purposes of admissibility, to establish that the sample was taken in a medically accepted manner.

Burp also argues that "[t]he testimony at trial does not clearly indicate that the blood serum result of 167MG/DL is a measure of weight." To obtain a conviction under I.C.

9–30–5–1, the State must prove the defendant operated a vehicle with ten-hundredths percent (.10%) or more, by weight, of alcohol in his blood. The test under I.C. 9–30–5–1 is the percent by weight of alcohol in the volume of the defendant's blood. *See generally* 260 IAC 1.1–2–1(e)(2) (Breath test equipment tested by weight/volume solution of ethanol in water).

It is true Ms. Cosak never was asked whether the measurements she made of the alcohol in Burp's blood were by weight.[2] But, it is a matter of common knowledge that a measurement of weight would be expressed in units of weight or mass and a measurement of volume in units of volume or their equivalent. A gram is a metric unit of measurement of weight or mass. A liter is a metric unit of capacity equal to one cubic decimeter, a measurement of volume. These principles are likewise not beyond the knowledge of the average lay-person. Ms. Cosak converted the results obtained from the testing of Burp's serum to whole blood and then testified that the percent of alcohol in the blood ranged from .13 grams percent to .15 grams percent. Her testimony is evidence of the percent by weight of alcohol in Burp's blood and is sufficient to sustain the jury's verdict.

Judgment affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.

---

2. Burp does not challenge the accuracy of Ms. Cosak's calculations or her methodology.