The PENN CENTRAL CORPORATION, Appellant–Respondent,

v.

James P. BUCHANAN, Appellee– Petitioner.

No. 06A04–9803–CV–137.

Court of Appeals of Indiana.

May 24, 1999.

Rehearing Denied June 23, 1999.

---

Robert J. Palmer, May, Oberfell & Lorber, South Bend, Indiana, Matthew J. Siembieda, Carl M. Buchholz, Timothy D. Katsiff, Blank Rome Comisky & McCauley LLP, Philadelphia, Pennsylvania, Attorneys for Appellant.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, Indiana, James P. Buchanan, Buchanan & Buchanan, Lebanon, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Penn Central Corporation (Penn Central), appeals the trial court's order imposing sanctions against Penn Central resulting from a successful challenge of its notice to depose Appellee, James P. Buchanan (Buchanan).

We reverse.

The sole issue which we address is whether the trial court erred in concluding that Penn Central was not substantially justified in seeking Buchanan's deposition.

The instant case was before the Boone Superior Court as a result of two competing statewide class actions in Parke and Hamilton Counties involving railroad corridors formerly owned by the Penn Central Corporation. Our appellate courts have considered and addressed various issues involving these parties over the years. To better understand the specific issue before us now and to prevent undue repetition of the underlying facts and procedural history, we incorporate herein the Indiana Supreme Court's background review as reported in *Hefty v. All Other Members of the Certified Settlement Class* (1997) Ind., 680 N.E.2d 843, 846–48, *reh'g denied.*

The Supreme Court's decision in *Hefty, supra,* 680 N.E.2d at 851 & 858, reversed a settlement agreement entered into by the Parke County class and Penn Central. The cause of action was remanded to the Parke Circuit Court to make findings as to the propriety of certifying the class. Following remand, counsel for the competing class actions discussed a plan for dismissing the Parke County action in which Buchanan was acting as class counsel, as well as being a member of the class. On or about October 6, 1997, Buchanan moved to dismiss the Parke County action. Without a hearing or opportunity for response, the trial court ordered dismissal of the Parke County action on October 8, 1997. The dismissal order was entered without class certification or notification to the proposed class members. Penn Central and U.S. Railroad Vest, Inc., a co-defendant in the underlying class actions, objected to the dismissal and filed a motion to correct errors. Following a hearing on the motions, the trial court on January 13, 1998, entered a Nunc Pro Tunc Order for Notice and Dismissal, wherein the court vacated the original dismissal and ordered notice be provided to the proposed class members.

By subpoena signed on October 28, 1997, Buchanan was summoned to appear for deposition with documents in the still-pending Hamilton County class action, a case captioned *Firestone, et al. v. Penn Cent. Corp. and U.S. Railroad Vest, Inc.,* Cause No 29D03–9210–CP–500. The subpoena indicated that the deposition was scheduled to take place at the Boone County Courthouse on November 5, 1997.[1] Buchanan filed a Verified Motion to Quash, for Protective Order and Attorney's Fees on November 3, 1997, in the Boone Superior Court.[2] Without hear-

---

1. However, the notice accompanying the subpoena indicated that the deposition would take place at the offices of Barnes & Thornburg, in Indianapolis.

2. Prior to filing the motion to quash, Buchanan sent counsel for Penn Central two requests to withdraw the notice of deposition. Counsel for the Hamilton County class sent a similar request

ing, the trial court granted Buchanan's motion one day later, November 4, 1997. Further, the trial court scheduled a hearing to consider Buchanan's request for attorney's fees and expenses.

The hearing was held on January 23, 1998. In its order dated January 31, 1998, the trial court found that, "Penn Central Corporation has failed to establish substantial justification for the discovery requested, and, further ... [the court determined] that Penn Central Corporation should pay ... the costs, expenses, and attorneys' fees incurred by [Buchanan] to avoid such discovery." Record at 96. The trial court ordered Penn Central to pay Buchanan $9,000 in attorney's fees and $100 in court costs, in addition to paying Buchanan's counsel, James E. Ayers, $2,204 in attorney fees.

Penn Central now appeals the sanctions award, asserting that it possessed substantial justification for seeking Buchanan's deposition. While prior Indiana cases have referenced the "substantial justification" requirement, no case has defined the phrase. Accordingly, what constitutes a "substantial justification" is an issue of first impression in Indiana.

■ Ind. Trial Rule 26(C) governs motions for protective orders from discovery requests. The rule allows the court in the county wherein a deposition is scheduled to "make any order which justice requires to protect a party" from oppressive discovery requests. Further, T.R. 26(C) states that, "[t]he provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion [for a protective order]." T.R. 37(A)(4), which concerns the awarding of expenses for successfully prosecuting and defending against motions to compel discovery, provides in part:

"If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to

pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award or expenses unjust." [3]

Thus, when a protective order is either entered or denied, a presumption arises that the trial court will also order reimbursement of the prevailing party's reasonable expenses. *See Georgetown Steel Corp. v. Chaffee* (1988) Ind.App., 519 N.E.2d 574, 576 (acknowledging such a presumption where motion to compel discovery granted), *trans. denied.* "This award is mandatory, subject only to a showing that the losing party's conduct was substantially justified, or that other circumstances make an award of expenses unjust." *Price by Price v. Methodist Hosps., Inc.* (1992) Ind.App., 604 N.E.2d 652, 654 (citing *Castillo v. Ruggiero* (1990) Ind.App., 562 N.E.2d 446, 451, *trans. denied*).

While Penn Central characterizes the trial court's ruling as an abuse of discretion, the instant appeal in fact challenges whether sufficient evidence supported the trial court's finding that Penn Central lacked substantial justification for its discovery request. *Georgetown Steel, supra,* 519 N.E.2d at 576. In order to determine whether sufficient evidence supports the trial court's finding, we must give meaning to the phrase "substantially justified." In its explanatory note regarding the 1982 amendments to T.R. 37, the Indiana Supreme Court Committee on Rules of Practice and Procedure commented that, "[t]he source of the substantial amendments

concerning the Buchanan subpoena as well as concerning depositions from Nels Ackerson (a class counsel for the Hamilton County class) and another person.

3. Substantial justification for opposition to a motion for a protective order presupposes, in this context, that the party will demonstrate substantial justification for subpoenaing the deposition.

to Trial Rule 37 is [Federal Rule of Civil Procedure] 37, as adopted effective July 1, 1970. The Federal Advisory Committee Note on F.R.C.P. 37 is important in the interpretation of this trial rule.…" The Federal Advisory Committee Note on the 1970 amendments to F.R.C.P. 37(a)(4)[4] states:

"The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified.… On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exits."

Federal courts have discussed the meaning of the phrase "substantially justified." In dicta, the United States Supreme Court, in *Pierce v. Underwood* (1988) 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490, commented upon the phrase as used in F.R.C.P. 37.[5] In *Pierce,* the Court wrote, "[t]o our knowledge, [the phrase] has never been described as meaning 'justified to a high degree,' but rath-

er has been said to be satisfied if there is a 'genuine dispute,' … or 'if reasonable people could differ as to [the appropriateness of the contested action].'" *Pierce, supra,* 487 U.S. at 565, 108 S.Ct. at 2550 (citations omitted).

Lower federal court decisions have interpreted the phrase "substantial justification" by applying a reasonable person standard. Three such decisions were cited by the Supreme Court in *Pierce. See Reygo Pac. Corp. v. Johnston Pump Co.* (1982) 9th Cir., 680 F.2d 647, 649 ("A request for discovery is 'substantially justified' under the rule if reasonable people could differ as to whether the party requested must comply."); *Smith v. Montgomery County* (1983) Md., 573 F.Supp. 604, 614 ("Opposition to a motion is 'substantially justified' if the motion raised an issue about which reasonable men could genuinely differ on whether a party was bound to comply with a discovery rule.") (internal quotation omitted); *Quaker Chair Corp. v. Litton Bus. Sys.* (1976) S.D.N.Y., 71 F.R.D. 527, 535 ("Thus, the presence of a genuine dispute over a legal issue ordinarily indicates that the losing party on the motion is 'substantially justified' in his opposition, and an award of costs to the prevailing party is unwarranted."). In 1990, the Court of Appeals for the District of Columbia applied the definition

---

**4.** The text of F.R.C.P. 37(a)(4) is substantially similar to that of T.R. 37(A)(4). The Federal Rule requires in part:

"(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust. (B) If the motion is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's

fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust."

Thus, under either the Indiana or Federal Rules, expenses may be awarded to those who either successfully prosecute or defend against a motion to compel discovery or, by reference, a motion for a protective order. *See* F.R.C.P. 26(c) ("The provisions of [F.R.C.P.] 37(a)(4) apply to the award of expenses incurred in relation to the motion.").

**5.** *Pierce* involved interpretation of the phrase "substantially justified" within the meaning of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), which allows for the award of fees and expenses (including attorney's fees) against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." As used in the EAJA, the Supreme Court in *Pierce* concluded that "substantially justified" meant, " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce, supra,* 487 U.S. at 565, 108 S.Ct. at 2550.

from *Smith, supra* at 614, in reiterating its standard that, "a person is substantially justified in opposing the motion if issues are raised 'about which reasonable persons could genuinely differ on whether a party was bound to comply with a discovery rule.'" *Spellman v. American Sec. Bank* (1990) D.C.Cir., 579 A.2d 151, 155 (quoting *Habib v. Thurston* (1985) D.C.Cir., 517 A.2d 1, 9). Many of the federal courts, including the Supreme Court in *Pierce, supra,* in analyzing the phrase refer to the treatise, *Federal Practice and Procedure,* which asserts, ."[m]aking a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2288 (2d ed.1994); *See, e.g., In re Akros Installations, Inc.* (1987) 9th Cir., 834 F.2d 1526, 1530 (quoting same standard from C. Wright & A. Miller, *Federal Practice and Procedure* § 2288 (1970)).

█ Though not worded precisely the same, the general principle underlying the decisions of the lower federal courts and the comments of the Supreme Court in *Pierce, supra,* is that of reasonableness. The federal decisions cited *supra* provide sound guidance for defining the phrase "substantially justified" as used within the Indiana Trial Rules. We conclude that a person is "substantially justified" in seeking to compel or in resisting discovery, for purposes of avoiding the sanctions provided by T.R. 37(A)(4), if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery.

█ Applying this definition to the facts of the instant case, we determine that the record lacks sufficient evidence to support the trial court's conclusion that Penn Central was not substantially justified in seeking to depose Buchanan. We must examine the facts before the trial court at the time of its decision. At the heart of this case is the fact that two class action suits, consisting of virtu-ally the same class members, were bringing virtually the same claims against Penn Central in two different counties. The Indiana Supreme Court had previously ruled that the Parke County action, for which Buchanan was class counsel, had been the first filed class action of the two suits. Subsequently, the Indiana Supreme Court ruled that a question of fact remained as to whether the Parke County class had been properly certified, and the Court set aside the settlement approved by the trial court in the Parke County action. After the Parke County action was remanded, class counsel and Penn Central agreed to a dismissal of the Parke County action which would preserve some of the benefits contained within the original settlement agreement. The dismissal was granted, although it was later vacated and replaced with a Nunc Pro Tunc Order that was entered more than three months after dismissal of the Parke County action. The original dismissal order from October 8, 1997, stated in part:

"[P]rior to his death class representative [for the Parke County action] received all relief he desired namely: quiet title vested in his heirs; ... and pursuant to *Hefty, supra,* [680 N.E.2d 843], the notice mailed to class members is ineffective to bind absent class members.... Any claims of absentees may be prosecuted in the parallel action pending in the Hamilton Superior Court No. 3.... [A]ttorneys for plaintiffs in the Hamilton County case have agreed to enforce the titles of class members...." Record at 15.

Twenty days after the Parke County action was dismissed, Penn Central subpoenaed Buchanan's deposition with regard to the Hamilton County class action, scheduling it for November 5, 1997. In that action, Penn Central had filed a motion to dismiss under T.R. 12(B)(8).[6] In response to the motion, plaintiffs in the Hamilton County action indicated the following in their October 6, 1997, memorandum in opposition to Penn Central's motion to dismiss:

6. T.R. 12(B)(8) allows for the dismissal of an action because, "[t]he same action [is] pending in another state court of [Indiana]."

"Moreover, Mr. Buchanan apparently will not move for class certification again, and appears to have no reason to do so. He has stated that his priority is to preserve for his father's heirs and those other class members who received quitclaim deeds [from the vacated settlement agreement in the Parke County action and] the benefits received from those quitclaims, leaving the pursuit of other remedies to [the Hamilton County action].... [B]oth Mr. Buchanan and Plaintiffs' counsel have agreed to a resolution of [the Parke County action] in a matter that should require no significant further action in that case." Record at 177.

This statement is consistent with information contained in a letter, dated October 2, 1997, from Nels Ackerson, Plaintiffs' counsel in the Hamilton County action, to Buchanan, which provided in part:

"To confirm the substance of our understanding, we will join you in seeking the protection [Buchanan requested][7].... In particular, we will seek an order confirming that the quitclaim deeds delivered by [co-defendant] USRV to your father [the class representative] (or his heirs) and other class members are valid and sufficient to authorize county officers to transfer title on tax records and to extinguish any cloud on title resulting from earlier documents that purported to transfer interest to Penn Central or USRV.... [A]fter the other

terms [of Buchanan's request] are satisfied you will either dismiss the [Parke County] action or withdraw your appearance and agree that our appearance may be substituted." Record at 165.

Penn Central's motion to dismiss was denied by the Hamilton County Superior Court on October 20, 1997.

On October 30, counsel for Penn Central wrote to Buchanan, "we believe that you have unique information that is relevant and discoverable relating to the adequacy of [Hamilton County action] class counsel. Penn Central is entitled to discover this information in preparation for the class certification hearing the [Hamilton County] Court has set for November 24, 1997." Record at 210. Buchanan testified that it was "correct" to say that the purpose of his deposition "was to inquire about the terms of an agreement between [him] and Mr. Ackerson regarding the dismissal of the [Parke County] lawsuit." Record at 139.

On appeal, Penn Central claims that it was substantially justified in seeking to depose Buchanan, because it was facing a class certification hearing in the Hamilton County action and it needed information possessed by Buchanan, with regard to his agreement to dismiss the Parke County action, in order to properly challenge the adequacy of Ackerson's service as class counsel.[8] The order

---

7. Buchanan requested in a letter to Ackerson, dated September 30, 1997, that a dismissal of the Parke County action provide protections as follows: (1) the ability to enter quitclaim deeds delivered by co-defendant USRV to class members for purposes of taxation and recording; (2) use of the deeds to establish record or marketable title; (3) retention by Buchanan's firm of $8,300 in previously received funds; and (4) entitlement of Buchanan's firm to receive $30 from each escrow payment for each quitclaim deed delivered by USRV since October of 1993. Buchanan and Ackerson agreed to delete item number four of the request.

8. Penn Central somewhat inaccurately asserts, "[t]he agreement between Buchanan and Ackerson was relevant to the adequacy of Ackerson's representation of the proposed [Hamilton County] class, *an element of a class certification order.*" Reply Brief at 6 (emphasis supplied). Strictly speaking, it is not the adequacy of *counsel* that T.R. 23(A)(4) addresses; rather, it is the adequacy of the *representative class members*

which is the concern of the rule. *See* T.R. 23(A)(4) (stating that one or more class members may sue or be sued as representative parties only if, among other things, "the representative parties will fairly and adequately protect the interests of the class"). However, as noted in 7A Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1 (1986), in discussing class counsel with regards to F.R.C.P. 23(a), "when the court reviews the quality of the representation, it will inquire not only into the character and quality of the named representative party, but also it will consider the quality and experience of the attorneys for the class." Whether class counsel adequately represents all class members is certainly a proper area of inquiry for Penn Central, which possessed an interest in having all class members' claims against it fairly adjudicated or risk further litigation if any settlement or judgment was subsequently overturned because the Hamilton County class counsel did not impartially represent all members of the class.

dismissing the Parke County action, while subsequently vacated, at the time it was entered granted certain class members benefits of a settlement previously vacated by the Indiana Supreme Court, which benefits were not available to all class members. Class members of the Hamilton County action could have previously opted out of the Parke County settlement and, thus, not have been entitled to the provisions of such settlement. However, the settlement was vacated and the trial court was ordered to reconsider class certification, so that no class remained from which any member of the proposed class could have opted out. Ackerson and his co-counsel Henry Price helped to facilitate dismissal of the Parke County action. The motion to dismiss which they supported failed to meet the dictates of T.R. 23(E), which requires, "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." As noted by Penn Central:

> "Buchanan understood that his deposition was noticed for the purpose of inquiring into the terms and conditions of that agreement [between Ackerson, Price and Buchanan]. Since the agreement would ultimately result in affecting certain class members, and not others, and moving the case from the county in which it was first filed, Parke County, to Hamilton County, and, in effect, substituting Nels Ackerson and Henry Price as class counsel, all without notice to the class, the agreement and the negotiations leading up to it were relevant to the issue of the adequacy of Ackerson and Price to represent the class in Hamilton County." Reply Brief at 11.

Reasonable minds could disagree as to the extent that negotiations between Hamilton County class counsel and Buchanan were relevant to the adequate representation of the Hamilton County class members, especially where the content of the negotiations remained undisclosed. Even considered in the light most favorable to Buchanan, however, the information sought was relevant to the Hamilton County action. Therefore, evidence was insufficient to support a conclusion that Penn Central was not substantially justi-

fied in seeking to depose Buchanan, unless no genuine dispute existed that the requested discovery was privileged and therefore protected from disclosure.

 Buchanan contends that Penn Central was not substantially justified in seeking his deposition because his testimony was absolutely protected by the attorney-client privilege and the work-product doctrine. We disagree. Buchanan cites *Corll v. Edward D. Jones & Co.* (1995) Ind.App., 646 N.E.2d 721 to support his position. At issue in *Corll* was whether the trial court abused its discretion in compelling disclosure of the content of communications which occurred during group meetings of investors and counsel prior to the filing of a class action suit. The *Corll* court reasserted the general rule that, "when an attorney is consulted on business within the scope of his profession, the communication on the subject between him and his client should be treated as strictly confidential." *Corll, supra* at 724 (quoting *Colman v. Heidenreich* (1978) 269 Ind. 419, 381 N.E.2d 866, 869). The privilege applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities. *Id.* The party asserting the privilege has the burden to show the consultation was a professional one. *Id.* The person claiming the privilege must show that (1) an attorney-client relationship existed and (2) a confidential communication was involved. *Id.* (citing *Hueck v. State* (1992) Ind.App., 590 N.E.2d 581, 584, *trans. denied* ).

*Corll* does not further Buchanan's claim. The communications in *Corll* were those between proposed class members and class counsel, not between counsel for two competing classes. The communications at issue in the instant case involved class counsel only. There is no indication that Penn Central sought to uncover communications between class counsel and class members. Moreover, Buchanan asserts that the requested discovery involves his mental impressions and legal theories. However, the record does not reflect how the requested discovery sought to uncover such information. Thus, he did not demonstrate that the communications at is-

sue were confidential in nature. Based upon evidence of record, Buchanan failed to meet his burden to show that an attorney-client privilege protected his communications with class counsel for the Hamilton County action.

■ We next consider the work-product doctrine. "The work-product doctrine prohibits a party in litigation from obtaining from another party its 'attorney's notes and memoranda reflecting the attorney's theories and mental impressions about the case.'" *Hayworth v. Schilli Leasing, Inc.* (1996) Ind., 669 N.E.2d 165, 169 n. 7 (quoting *Cua v. Morrison* (1993) Ind.App., 626 N.E.2d 581, 584, *adopted by* (1994) Ind., 636 N.E.2d 1248). T.R. 26(B)(3) governs the work-product doctrine. The rule provides that a party may obtain discovery of documents and tangible items prepared by another party's attorney in anticipation of litigation or for trial but "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." While "ordinary" work-product materials may be discoverable upon a special showing, "a party seeking discovery is never entitled to the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." *National Engineering & Contracting Co., Inc. v. C & P Engineering & Mfg. Co, Inc.* (1997) Ind.App., 676 N.E.2d 372, 376. "Such material, often called opinion work product, is entitled to absolute protection from discovery." *Id.* Furthermore, according to the Indiana Supreme Court in *Hayworth, supra* at 169 (citations omitted):

> "We first observe that courts disfavor blanket claims of privilege such as that asserted by [appellee]. The party seeking to assert a privilege has the burden to allege and prove the applicability of the privilege 'as to each question asked or document sought.' Claims of privilege 'must be made and sustained on a question-by-question or document-by-document basis.'"

*See also, National Engineering, supra* at 377 ("The determination of whether materials constitute work product necessitates a factual, case-by-case analysis.").

In its notice of deposition, Penn Central instructed Buchanan to produce at the scheduled deposition "[a]ll correspondence, notes of telephonic discussion, memoranda and other documents referring or relating to Nels Ackerson, Esquire, and/or Henry J. Price, Esquire, or their respective law firms...." Record at 24. In his motion to quash, Buchanan simply claimed that, "the documents requested and the subject matter of deponents' deposition are inextricably interwoven and an inseparable part of the mental impressions and legal theories of the class members' attorneys, in the Parke County case, and in the [Hamilton County] case...." Record at 9. While the subject of Penn Central's request is seemingly broad-based, Buchanan's blanket invocation of privilege is insufficient to support his assertion that all the requested documents were protected. While some of the requested documents and testimony may have been protected if properly challenged, such a determination must be made on an item specific basis. In addition, it is not at all clear that the requested items were produced in anticipation of litigation or trial. We also note that Buchanan was not a party to the Hamilton County action, the subject upon which he was to be deposed. In fact, at the time the subpoena was issued to Buchanan, the Parke County action—for which Buchanan was responsible—had been dismissed. Therefore, Penn Central was not required to make the "substantial need" showing as required by T.R. 26(B)(3). We note that T.R. 45(B) allows the trial court to quash or modify the subpoena of a witness if it is "unreasonable and oppressive." However, no such finding was made by the trial court in the instant case.

Neither the attorney-client privilege nor the work-product doctrine protected Buchanan from the requested discovery under the present facts. Even when considered in the light most favorable to Buchanan, reasonable persons could conclude that, under the circumstances, a genuine issue existed as to whether Buchanan was bound to comply with Penn Central's notice of deposition. Thus, we conclude that evidence of record was in-

sufficient to support a finding that Penn Central was not substantially justified in attempting to depose Buchanan.[9]

The trial court's judgment is reversed and the cause remanded with instructions for the trial court to vacate the award of expenses and attorney's fees against Penn Central in this action.

RUCKER, J., and DARDEN, J., concur.

9. Because we reverse the lower court's finding that Penn Central was not substantially justified in noticing Buchanan's deposition, we need not address whether the trial court abused its discretion in the amount of fees and expenses awarded to Buchanan.