WHITE–RODGERS, a division of Emerson Electric Co., SCI Propane, LLC, Midland–Impact, LLP, Rushshelby Energy Rural Electric Cooperative, Inc., SCI Services, LLC, RSE Services, Inc., and South Central Indiana Rural Electric Membership Corporation, Appellants–Defendants,

v.

Lonnie KINDLE, Courtney Frederick a/k/a Courtney Arnold, Samuel Frederick, by his parent Courtney Frederick, Courtney Frederick, as personal representative of the estate of Stephan Frederick, deceased, Ciera Davis, by her parents Kenneth Craig Davis and Billie Joanna (Jodi) Davis, and Kenneth Craig Davis and Billie Joanna (Jodi) Davis, individually, Appellees–Plaintiffs.

No. 55A05–0906–CV–00308.

Court of Appeals of Indiana.

April 14, 2010.

George E. Purdy, Bryan H. Babb, Kellie M. Barr, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant White–Rogers.

David K. Herzog, Jon Laramore, Jane A. Dall, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

In 2004, an apartment explosion in Morgan County claimed the life of one individual and seriously injured several others. In 2005, the victims of the explosion filed a complaint against several defendants, including White–Rodgers, the company that had manufactured the gas control on the water heater in the residence where the explosion occurred. Unfortunately, this case has gotten mired in fervently-contested discovery disputes. The most recent is the subject of this interlocutory appeal and stems from the trial court's decision to award attorneys' fees as a discovery sanction against White–Rodgers for its failure to produce expert materials from a settled case in which White–Rodgers was also a defendant.

While White–Rodgers certainly consulted with experts in the prior case, these experts were never designated as experts who would testify at trial. Indeed, White–Rodgers settled the case before designating any expert witnesses. Accordingly, these experts were and remain nontestifying experts whose materials are protected from discovery by the Indiana Trial Rules. Consequently, White–Rodgers has produced all that it was required to produce under the trial court's orders at issue herein, and we reverse the sanction's order and remand for the continuation of the underlying litigation.

Appellant-defendant White–Rodgers,[1] a division of Emerson Electric Company, (White–Rodgers) challenges the trial court's decision ordering it to pay $18,187 in attorneys' fees as a sanction for discovery noncompliance. White–Rodgers also appeals the merits of the underlying discovery orders preceding the sanctions award. Appellees-plaintiffs Lonnie Kindle; Courtney Frederick; Samuel Frederick, by his parent Courtney Frederick; Courtney Frederick as personal representative of the estate of Stephan Frederick, deceased; Ciera Davis, by her parents Kenneth Craig Davis and Billie Joanna Davis; and Kenneth Craig Davis and Billie Joanna Davis, individually, (collectively, "the Plaintiffs"), cross-appeal for appellate expenses. Inasmuch as the materials produced by nontestifying experts are protected from discovery not only in the litigation for which they were hired, but also in subsequent litigation, White–Rodgers has already produced all that it was required to produce under the discovery orders at issue herein. Thus, we reverse the award for sanctions and remand for the continuation of the underlying litigation.

## FACTS [2]

### The Explosion

In May 2004, an explosion occurred in an apartment attached to the barn of Bill and Betty Kindle in Morgan County. As a result of the explosion, Stephan Frederick was killed, and his wife, Courtney, and two-year-old son, Samuel, were badly burned. Courtney's two-year-old cousin,

---

1. Although White–Rodgers is the only defendant in this multi-defendant suit seeking relief in this interlocutory appeal, its co-defendants are listed in the case caption pursuant to Indiana Appellate Rule 17(A), which provides, "A party of record in the trial court ... shall be a party on appeal."

2. We heard oral argument on January 21, 2010, at Carmel High School. We would like to thank the school's administration, faculty, and students for their hospitality. Additionally, we thank counsel for their able presentations.

Ciera Davis, was also badly burned along with her uncle, Lonnie Kindle. On April 25, 2008, the Plaintiffs filed their amended complaint[3] asserting claims against White–Rogers for strict products liability and negligent design of a water heater control that the Plaintiffs alleged caused the explosion.

### Motions to Compel Discovery

It is undisputed that at a hearing on April 15, 2008, the Plaintiffs moved to compel White–Rogers to produce non-privileged documents from an ongoing case against White–Rogers in Missouri, captioned Glascock v. State Industries (Glascock). Glascock also involved a propane gas explosion and a water heater with a White–Rogers gas control valve. Two people were injured in the Glascock explosion. The trial court in this case ordered that White–Rogers had a continuing duty to supplement discovery herein with non-privileged, non-confidential materials in Glascock.

On October 27, 2008, the Plaintiffs filed a motion to compel, asking the trial court to issue an order compelling a White–Rodgers representative to respond under oath to questions regarding claims in Glascock, permitting the Plaintiffs to participate in Glascock depositions, and amending a protective order to facilitate the sharing of discoverable White–Rodgers information between the Plaintiffs and the plaintiffs in Glascock.

On November 24, 2008, White–Rodgers filed its response opposing the Plaintiffs' motion to compel. In its response, White–Rodgers informed the trial court that Glascock had been settled on November 12, 2008, and, consequently, "perhaps all or at least most of plaintiff's demands in the pending motion [are] academic." Appellant's App. p. 169–70.

On December 8, 2008, the Plaintiffs filed a reply seeking new relief. Specifically, the Plaintiffs requested that the trial court compel White–Rodgers to produce "expert reports" and "any reports of White–Rodgers' experts to White–Rodgers' counsel." Id. at 186.

On December 10, 2008, the trial court held a hearing on the Plaintiffs' motion to compel. At the hearing, White–Rodgers informed that trial court that, "[n]ever, before Judge Gray,[4] was there the slightest hint of disclosing expert opinions, expert investigation in Glascock under the umbrella of his order regarding public records.... The Court never addressed that, it never came up whether or not in this matter a related case could be discovered in another matter in the disclosure of those expert opinions, those investigation findings." Tr. p. 72.

On February 3, 2009, the Plaintiffs filed an unsolicited statement in support of the proposed order, arguing that White–Rodgers had to produce all expert materials from Glascock because "these expert materials are no longer entitled to protection from discovery." Appellant's App. p. 205. In support of this contention, the Plaintiffs cited to American Buildings Co. v. Kokomo Grain Co., Inc., 506 N.E.2d 56 (Ind.Ct. App.1987), which held that advisory consultants from prior litigation are not protected from discovery by Indiana Trial Rule 26(B)(4)(b). On February 6, 2009,

---

3. The Plaintiffs filed their initial complaint on October 24, 2005.

4. The Plaintiffs' amended complaint asserted claims against three new parties and the second-generation defendants moved for automatic change of judge, which the trial court granted on August 5, 2008. Appellant's App. p. 26. The Honorable Robyn L. Moberly was appointed Special Judge, and the December 10, 2008 hearing was the first hearing before her in this case.

White–Rodgers filed a motion to strike the Plaintiffs' unsolicited statement in support.

On February 9, 2009, the trial court issued its initial order (Initial Order) on the Plaintiffs' motion to the compel, requiring White–Rodgers to "produce all documents and tangible things that constitute or relate to any communications with any experts, any expert report, any expert file document, any correspondence, any discovery response or request, and/or any pleading or other paper not already produced from the claim/case of *Glascock v. State Industries, et al.*" *Id.* at 238–39. The trial court referenced *American Buildings* as direct support for its ruling, but did not address White–Rodgers's motion to strike the Plaintiffs' unsolicited statement in support.

On February 17, 2009, White–Rodgers filed a motion to reconsider, arguing that it had been prejudiced by the Plaintiffs' belated arguments regarding advisory consultants' materials in *Glascock* and the scope of the holding in *American Buildings*. In addition, White–Rodgers maintained that the Initial Order granted the Plaintiffs more relief than they requested, was overbroad, and that *American Buildings* was inapplicable because *Glascock* settled before White–Rodgers had designated expert witnesses or disseminated expert reports. Finally, White–Rodgers asserted that the holding in *American Buildings* is flawed and cited authority criticizing the opinion.

On February 25, 2009, the trial court granted White–Rodgers's motion to reconsider and issued an amended order (Amended Order) limiting the *Glascock* production. Specifically, the Amended Order stated that:

White–Rodgers shall produce all documents prepared by expert witnesses including notes, drawings, emails and reports from any experts retained in anticipation of litigation or for testimonial purposes. The only expert to be excluded from this discovery order shall be experts employed solely for purposes of consultation with counsel. White–Rodgers shall be relieved of an obligation to produce written materials provided to counsel and for counsel's use from experts retained solely for consulting purposes which set forth advisory opinions on litigation strategy or for purposes of settlement. Defendant White–Rodgers shall further produce any discovery responses or depositions provided by any expert in the Glascock litigation, all pleadings filed in the Glascock litigation, results of tests performed on the water heater control (or on a water heater control similar to the Glascock control) in the Glascock litigation, photographs, drawings, specifications, or design documents relating to the Glascock water heater control.

Appellant's App. p. 438–39.

On March 2, 2009, counsel for White–Rodgers corresponded with counsel for the Plaintiffs, noting that the Amended Order "is limited by its language to 'expert witnesses.' There were no 'expert witnesses' [designated] in *Glascock* on behalf of White–Rodgers," and no expert reports were published in *Glascock*. *Id.* at 457–59. White–Rodgers reiterated that it had already produced all non-privileged materials that were responsive to the Amended Order and that it had nothing further to produce.

### The Plaintiffs' Motion for Sanctions

On March 6, 2009, the Plaintiffs filed a motion for sanctions against White–Rodgers. They argued that although the Amended Order relieved White–Rodgers from producing any written materials provided to counsel for counsel's own use from experts retained solely for consulting purposes, "White–Rodgers is playing seman-

tics in suggesting that it doesn't have experts because it never disclosed testifying expert opinions in *Glascock.*" *Id.* at 445. The Plaintiffs asserted that the Amended Order was based on the holding in *American Buildings* that "[a] determination that items are not protected by T.R. 26(B)(4) [(dealing with expert testimony)] does not necessarily preclude a determination that the same materials are protected from discovery under T.R. 26(B)(3) [(dealing with work product)]," and maintained that White–Rodgers had experts whose reports are not work product protected from discovery in subsequent litigation. *Id.*

On March 13, 2009, White–Rodgers filed a response to the Plaintiffs' motion for sanctions, contending that the trial court's Amended Order did not require it to produce communications with consultants. White–Rodgers explained that "[e]xpert witnesses are established when a party declares a person an expert and proffers him for discovery. Until that event, which never occurred in *Glascock*, the engineers and other technically qualified personnel consulting with counsel about a case are *consultants* assisting the attorney in deciding trial strategy and settlement." *Id.* at 492 (emphasis in original).

On March 19, 2009, the Plaintiffs filed a reply in support of their motion for sanctions, citing again to *American Buildings.* White–Rodgers filed a supplemental memorandum in opposition to the motion for sanctions, detailing its extensive discovery production and distinguishing and critiquing *American Buildings.*

On April 7, 2009, the trial court held a hearing on the Plaintiffs' motion for sanctions. Two days later, the trial court issued a sanctions order (Sanctions Order) stating:

There is no showing that any of Defendant White–Rodgers's retained experts in the Glascock case were solely consulting/advisory experts. Therefore, without implied limitation, the expert notes, drawings, documents, and reports created in the Glascock matter relating to the manufacturing defect in the valve of the water heater shall be disclosed to Plaintiffs. White–Rodgers may redact trial strategy/litigation advice from produced materials. Attorney communications to experts shall not be disclosed. If it becomes necessary, a referee shall be named to review materials with cost to be born[e] by White–Rodgers. Production to occur by April 30. White–Rodgers is ordered to pay reasonable fees incurred in drafting and filing the Motion for Sanctions and appearance to so argue.

*Id.* at 709–10.

On April 24, 2009, the Plaintiffs submitted a petition for attorneys' fees with an affidavit from the Plaintiffs' lead counsel supporting their request for $18,187 in fees. White–Rodgers filed a response on May 4, 2009, arguing that "its opposition to plaintiffs' motion was 'substantially justified' [and] Rule 37 precludes an award of attorney's fees." *Id.* at 719. White–Rodgers maintained that "there [has been] no refusal to obey a court order" and emphasized that the trial court continuously narrowed White–Rodgers's required production in its subsequent orders. *Id.* at 724.

On May 7, 2009, the trial court entered an order awarding the Plaintiffs $18,187 in attorneys' fees (Fee Order). White–Rodgers now appeals.

## DISCUSSION AND DECISION [5]

### I. Jurisdiction

As an initial matter, we observe that although this is an interlocutory appeal as

---

**5.** Initially, we note that on December 1, 2009,

the Plaintiffs filed a motion requesting that

a matter of right because the Sanctions Order required White–Rodgers to pay money, White–Rodgers asks this court to review the underlying discovery orders in addition to the Sanctions Order. *See* Indiana Appellate Rule 14(A) (providing for an interlocutory appeal "as a matter of right" when an interlocutory order requires "the payment of money"). The Plaintiffs argue that White–Rodgers cannot challenge the underlying discovery orders because White–Rodgers did not intentionally disobey the Amended Order. In support of their position, the Plaintiffs direct this court to *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317 (Ind.Ct.App.2006).

In *Scroghan*, this court concluded that it had jurisdiction to review an underlying discovery order after a party incurred a monetary sanction for noncompliance with the order. *Id.* at 322. This court reasoned that "[w]hile we do not condone the practice of intentionally violating discovery orders to obtain appellate review of those orders, we recognize that such a practice can act as an important 'safety valve,' which relieves parties from generally nonappealable discovery orders." *Id.* The *Scroghan* court proceeded to review the merits of the underlying discovery order and ultimately reversed the trial court's decision denying the appellant's request for a protective order. *Id.* at 324–25.

Although, unlike the appellant in *Scroghan*, White–Rodgers did not intentionally fail to comply with the discovery orders, judicial economy supports the conclusion that this court should review the merits of the underlying discovery orders. Indeed, it is impractical for this court to determine whether White–Rodgers's opposition to the discovery orders was substantially justified without first analyzing the merits of the underlying discovery orders.

Moreover, in light of *Scroghan*, a rule that would only permit review of the underlying discovery order when there has been intentional noncompliance with the order would reward disobedient parties with a broader basis for appellate review while punishing obedient parties. We decline to adopt such a rule.

## II. Discovery Orders and Sanctions

### A. Standard of Review

 Proceeding to the merits, White–Rodgers argues that this court should reverse the trial court's decision to impose monetary sanctions on it because its opposition to the Plaintiffs' discovery into the *Glascock* materials was substantially justified and the underlying discovery orders are erroneous. A trial court has broad discretion in ruling on issues of discovery and in determining appropriate sanctions for failing to comply with a trial court's discovery order. *Scroghan*, 851 N.E.2d at 321–22. Accordingly, an appellate court will interfere only when the appealing party can show an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court reached a conclusion that is against the logic and effect of the circumstances before it. *Burr v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 1250, 1253–54 (Ind.Ct.App.1990).

 When a trial court must compel discovery, Indiana Trial Rule 37(A)(4) (Rule 37) provides that the trial court shall award "the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." A party is substantially justified for the purposes of avoiding sanctions for re-

their brief and appendix be opened to public access. Inasmuch as White–Rodgers does not oppose this request, the Plaintiffs' motion is granted.

sisting discovery "if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery." *Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 513 (Ind.Ct.App.1999). Likewise, fees should not be awarded when genuine discovery disputes occur between parties, even though the dispute is ultimately resolved in favor of one party. *Id.* at 512.

### B. Discovery of Expert Materials

At the core of this dispute is Indiana Trial Rule 26(B)(4) (Rule 26(B)(4)), which governs experts. Specifically, Rule 26(B)(4) states, in relevant part:

(a) (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

\*　　\*　　\*

(b) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Accordingly, Rule 26(B)(4) distinguishes between an expert who is expected to testify at trial and one who is not expected to testify by permitting broad discovery of the former, but very limited discovery of the latter. Indeed, Rule 26(B)(4)(b) provides one of the few exceptions to the general rule that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action...." Ind. Trial Rule 26(B)(1). Additionally, Rule 26(B)(4) " 'was adopted in order to treat the expert witness outside of the work-product privilege, but within the specific context of a Rule and upon a basis of 'fairness.' ' " *R.R. Donnelley & Sons Co. v. N. Tex. Steel Co., Inc.*, 752 N.E.2d 112, 132 (Ind.Ct.App.2001) (quoting William F. Harvey, Indiana Practice: Rules of Procedure Annotated § 26.14 (3d ed. 2000)).

In determining whether Rule 26(B)(4)(b)'s discovery protections apply to an expert, this court has stressed the importance of whether the expert has been designated as a testifying expert. In *Reeves v. Boyd & Sons, Inc.*, a plaintiff designated an expert as a witness at trial but subsequently undesignated the same expert after a notice of deposition and subpoena had already been served. 654 N.E.2d 864, 874 (Ind.Ct.App.1995). The trial court issued a protective order preventing the deposition and, on appeal, this court affirmed:

"Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind. Since plaintiff changed his mind before any expert testimony was given in this case, the witness never actually acted as a testifying expert witness. The court cannot find, then, that the shift in designation affects the witness's current status as a non-testifying expert witness and denies him the protection afforded such a witness."

*Id.* at 875 (quoting *Ross v. Burlington N. R.R. Co.*, 136 F.R.D. 638, 639 (N.D.Ill. 1991)).

After recognizing that the rationale behind the federal counterpart to Rule 26(B)(4) was to prevent unfairness, this

court emphasized that "[w]e presume that our supreme court was familiar with the rationale underlying the drafting of the federal rule ... when adopting our very similar [Trial Rule] 26(B)(4) and, in so doing, distinguishing between discovery as to a testifying expert and a non-testifying expert." *Id.* Consequently, this court concluded that "[i]n the case of an expert 'who is not expected to be called as a witness at trial,' a 'showing of exceptional circumstances' is required in order to go forward with discovery." *Id.* (quoting Ind. T.R. 26(B)(4)(b)).

Similarly, in *Donnelley*, one of the defendants in a multi-defendant products liability action "hired ... an expert" in the case but "did not designate him as a witness for trial because [it] settled out of the case before filing a witness list." 752 N.E.2d at 130–31. After the settlement, a remaining defendant sought discovery of the nondesignated expert's opinion. *Id.* at 131.

This court held that when a party seeks discovery of an expert who is not expected to be called at trial, exceptional circumstances must be shown, even if the party who consulted with the expert settles before trial. *Id.* at 132. We reasoned that the policy behind this rule is " 'to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation.' " *Id.* (quoting *Reeves,* 654 N.E.2d at 875). Moreover, "[t]he same reasoning applies although [the party who hired the expert] settled out of the case." *Id.* Thus, *Reeves* and *Donnelley* establish that under Indiana law, a party's designation of a testifying expert is a crucial decision that directly affects the discovery protection provided by Rule 26(B)(4)(b).

In the instant case, the Amended Order, which was issued in response to White–Rodgers's motion to reconsider the Initial Order, narrowed the scope of what White–Rodgers was required to produce. Specifically, the Amended Order stated:

> White–Rodgers shall produce all documents prepared by expert witnesses including notes, drawings, emails and reports from any experts retained in anticipation of litigation or for testimonial purposes. The only expert to be excluded from this discovery order shall be experts employed solely for purposes of consultation with counsel. White–Rodgers shall be relieved of an obligation to produce written materials provided to counsel and for counsel's use from experts retained solely for consulting purposes which set forth advisory opinions on litigation strategy or for purposes of settlement.

Appellant's App. p. 438–39.

Less than one week later, on March 2, 2009, counsel for White–Rodgers sent a letter to the Plaintiffs' counsel stating that the Amended Order was limited to "expert witnesses," and that White–Rodgers did not have expert witnesses in *Glascock. Id.* at 457. The letter also detailed White–Rodgers's production of other *Glascock* materials, including depositions, pleadings, photographs, field notes, and drawings before concluding that White–Rodgers had already produced "all non-privileged materials responsive to the Court's [Amended Order]." *Id.* at 459.

In light of this court's holdings in *Reeves* and *Donnelley,* we conclude that White–Rodgers indeed had produced all that it was required to produce under the Amended Order. Because White–Rodgers never designated any testifying experts, the Plaintiffs were required to show "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." T.R. 26(B)(4)(b). Inasmuch as the Plaintiffs never argued

that exceptional circumstances existed, White–Rodgers did not have to disclose its expert materials from *Glascock.*

Nevertheless, the Plaintiffs argue that pursuant to *American Buildings,* White–Rodgers was required to produce "documents from both testifying experts and consulting experts" once *Glascock* had settled. Appellee's Br. p. 23. In *American Buildings,* this court held that expert-related materials from prior, terminated litigation are subject to discovery in later litigation after the litigation for which the experts were engaged has been resolved. 506 N.E.2d at 60.

Initially, we observe that *Reeves* and *Donnelley* were decided after this court's 1987 decision in *American Buildings.* And as discussed above, both *Reeves* and *Donnelley* stand for the proposition that a party's designation of a testifying expert directly affects the discovery protection provided to that expert. Accordingly, to the extent that *American Buildings* holds that Rule 26(B)(4)(b)'s discovery protections do not extend to subsequent litigation, that holding is overly broad and was subsequently narrowed.

Moreover, to hold that Rule 26(B)(4)(b) discovery protections do not extend to subsequent litigation would chill the purposes of the discovery rules, which are to "provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Nat'l Eng'g & Contracting Co., Inc., v. C & P Eng'g & Mfg. Co., Inc.,* 676 N.E.2d 372, 375 (Ind.Ct.App.1997). Specifically, compelling a party to disclose materials from its nontestifying experts from prior litigation would have a detrimental impact on settlement that is two-fold. First, parties will be reluctant to consult with experts if they know that any expert with whom they consult will be discoverable in subsequent litigation. Indeed, parties will delay gathering information from experts for as long as possible even though this information would reveal the various strengths and weaknesses in a given case. Consequently, settlement will be delayed if it occurs at all. Additionally, parties will be reluctant to settle if they know that settlement will strip discovery protections from the materials produced by their nontestifying experts, thus clogging the courts with additional and perhaps unnecessary litigation.

Furthermore, the discovery protections provided to nontestifying experts by Rule 26(B)(4)(b) are based upon principles of fairness of not allowing one party to build its case on the resources and due diligence of another party. *Donnelley,* 752 N.E.2d at 132; *Reeves,* 654 N.E.2d at 875. Although the Plaintiffs argue that "the 'fairness' equation is completely different in subsequent litigation because the prior-litigation expert work already was purchased in the prior case," appellee's br. p. 33, this argument ignores the fact that expert materials are still valuable to the purchasing party even though the litigation for which they were initially hired may have terminated. Indeed, the case herein is very similar to *Glascock,* and, consequently, it is reasonable to infer that the expert materials from *Glascock* will assist White–Rodgers in developing its litigation strategy. Moreover, a party who seeks discovery of the materials produced by another party's nontestifying expert remains free to utilize his own resources to gather such information.

That said, pursuant to the underlying discovery orders, White–Rodgers was only required to disclose expert witnesses or, in other words, testifying experts. Because White–Rodgers had not designated any testifying experts in *Glascock,* it was required to produce materials from its nontestifying experts only if the Plaintiffs could demonstrate "exceptional circum-

stances," T.R. 26(B)(4)(b), which the Plaintiffs failed to show. Consequently, because White–Rodgers had already produced all non-privileged materials pursuant to the underlying discovery orders, the trial court abused its discretion when it imposed sanctions, and we reverse and remand for the continuation of the underlying litigation.

The judgment of the trial court is reversed and remanded for the continuation of the underlying litigation.[6]

FRIEDLANDER, J., concurs.

CRONE, J., dissents with opinion.

CRONE, Judge, dissenting.

Initially, I note my reluctant agreement with the majority's determination that we have jurisdiction to address the merits of the underlying discovery orders in this case. My reluctance is based primarily on the fact that I was on the panel that decided *Scroghan;* although we did not intend to open the floodgates of appellate litigation regarding discovery matters, I am now concerned that such could well be the practical effect of that decision. Perhaps any newfound zeal to pursue such litigation will be tempered by the prospect of additional sanctions for an unsuccessful appeal. *See Georgetown Steel Corp. v. Chaffee,* 519 N.E.2d 574, 577 (Ind.Ct.App. 1988) (holding that appellees were entitled to expenses of successfully defending motion to compel on appeal, given that such expenses were created by appellant's "failure to reply with a reasonable discovery request" and that "if appellate expenses were not awardable, then the original award [for discovery sanctions] would be offset and its benefit negated."), *trans. denied.*

Turning to the merits of this case, I believe that White–Rodgers's failure to comply with the discovery orders was not substantially justified in light of *American Buildings Co. v. Kokomo Grain Co.,* 506 N.E.2d 56, which in my view should control the outcome of this case. Although *American Buildings* has been on the books and guided discovery proceedings in Indiana for nearly a quarter century,[7] the majority gives it short shrift and criticizes its holding as "overly broad[.]" Op. at 414. I respectfully disagree.

The relevant facts in *American Buildings* are these:

The litigation stems from the collapse of a grain storage building sold by American to Kokomo. Following the collapse, Kokomo filed its complaint against American alleging breach of contract, negligence, fraud, and strict liability in tort for defective engineering, design, manufacturing, erection and construction of the building.

In the course of discovery, Kokomo filed a request for production by American of all investigative reports and notes made by American, or on its behalf, regarding six prior similar failures of buildings sold by American. Kokomo specifically requested the report of Jim Fisher, an expert hired by American to analyze the collapse of a building in Wisconsin similar to the building sold by American to Kokomo. American object-

---

**6.** Inasmuch as we find in favor of White–Rodgers, we need not consider the Plaintiffs' request for appellate expenses.

**7.** Consequently, I find White–Rodgers's reference to Pandora's Box in its discussion of *American Buildings* especially inapposite. *See* Appellant's Br. at 30–31 ("By allowing a party to discover the strategic advice its adversary obtained in prior litigation simply because that litigation has terminated is the antithesis of fairness and akin to opening Pandora's Box on Trial Rule 26 discovery protections.").

ed to the request, asserting that the documents sought were irrelevant and protected by the work-product doctrine. 506 N.E.2d at 58.

Kokomo moved for an order to compel. The trial court granted the motion and issued an order compelling American

> to comply therewith save and except those matters which are the work product of the attorneys on any and all cases that were actually filed and active at the time the information sought was determined. The court finds that all other memorandums, testing results and the like are relevant to the case at bar and are discoverable as non-work product.

*Id.* The trial court certified its order for interlocutory appeal.

On appeal, American argued that the order to compel was erroneous in that "(1) permits discovery of work product from previously terminated litigation, (2) requires a case to have been actually filed and active at the time a document was created in order for the document to qualify as work product, and (3) limits the work-product doctrine to work product of attorneys." *Id.* In responding to these arguments, this Court observed that

> while both parties couch their arguments in terms of the work-product doctrine, this case also involves the requested production of a document prepared by an expert in anticipation of litigation. The concepts are distinct. The discovery of work product and matters from experts are governed by separate provisions within Trial Rule 26[, i.e., subdivisions (B)(3) [8] and (B)(4) ].

*Id.*

Writing for a unanimous panel, Judge Sullivan noted that Indiana Trial Rule 26 is adopted from the Federal Rules of Civil Procedure and quoted federal authorities stating that the work product doctrine provisions of Federal Rule 26 are not controlling on the issue of expert information. He concluded, "[t]hus, when discussing the discovery of facts known and opinions held by an expert, we are not concerned with a branch of the work-product doctrine but rather a separate exception to the general rule codified by [Trial Rule] 26(B)(1) that all relevant matters are discoverable." *Id.* at 59. He then framed the issue as follows:

> Because the rule governing discovery of materials from experts is distinct from the rule governing discovery of work product, our inquiry with respect to the report prepared by Jim Fisher is not whether the work-product exception to the general discovery rule of 26(B)(1) applies to work product prepared in anticipation of prior litigation, but whether the 26(B)(4) exception applies to experts retained in anticipation of prior litigation.

*Id.*

Judge Sullivan acknowledged that this was a question of first impression in

---

8. Trial Rule 26(B)(3) reads in pertinent part, Trial preparation: Materials. Subject to the provisions of subdivision (B)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (B)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Indiana and considered several federal authorities that were "helpful in the resolution of the issue." *Id.* He then stated, "Our reading of Indiana Trial Rule 26(B)(4) leads us to the same conclusion reached by the cases cited above—that the protection granted materials from experts does not extend to facts known or opinions held by an expert retained or specifically employed in anticipation of prior litigation." *Id.* at 60. Judge Sullivan closely examined the wording of Trial Rule 26(B)(4)(a)(i) and –(b) and remarked,

> It is impossible for an expert not to be expected to be called as a witness in a trial which has already taken place. Thus, 26(B)(4)(b) does not apply to expert witnesses retained or specifically hired in anticipation of prior litigation. The report prepared by Jim Fisher was not protected from discovery by [Trial Rule] 26(B)(4)(b).

*Id.* at 60–61 (footnote omitted).

Judge Sullivan hastened to observe, however, that

> [a] determination that items are not protected by [Trial Rule] 26(B)(4) does not necessarily preclude a determination that the same materials are protected from discovery under [Trial Rule] 26(B)(3). However, in this case it is clear that the Fisher report does not fall within the ambit of 26(B)(3), even though 26(B)(3) may protect work product prepared in anticipation of prior litigation. Trial Rule 26(B)(3) protects documents and tangible things prepared in anticipation of litigation by a party or the party's representative, including his attorney, consultant, surety, indemnitor, insurer, or agent.
>
> Fisher was an expert retained by American rather than a representative of American. It could be argued that Fisher was a consultant. However, in the context of Trial Rule 26(B)(3) a consultant must do more than simply provide information. A consultant provides advice. One who provides advice does so in order to aid the party he is advising. The two are teamed in an effort to achieve a successful result. In contrast, the primary function of an expert is to provide information. "[A]n expert is expected to owe his allegiance to his calling and not to the party employing him." *Virginia Electric & Power Co. [v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 406 (E.D.Va.1975)]. In this case, there is nothing of record to indicate that Fisher served American in any role other than that of expert. He provided American with his expert opinion as to the reason for the Wisconsin building collapse. He did not advise American in its preparation for litigation. He was not a consultant and his opinion and report were not protected by [Trial Rule] 26(B)(3).

Because the report prepared by Fisher is not protected either by [Trial Rule] 26(B)(3) or [Trial Rule] 26(B)(4), it is discoverable under the general provisions of T.R. 26(B)(1). There can be no doubt that the Fisher report is relevant.

"[R]elevancy for the purposes of discovery is not the same as relevancy at trial. A document is relevant to discovery if there is the possibility the information sought may be relevant to the subject matter of the action." *CIGNA–INA/Aetna v. Hagerman–Shambaugh,* [473 N.E.2d 1033, 1036 (Ind.Ct.App. 1985)] (citations omitted).

The reasons for the previous collapse of a building similar to that purchased by Kokomo might closely approximate the circumstances or conditions surrounding the Kokomo collapse. The Fisher report is, therefore, discoverable.

*Id.* at 61 (footnote and some citations omitted) (some alterations in *American Buildings* ).

Judge Sullivan then "consider[ed] the other documents sought to be protected by American under the work-product doctrine of [Trial Rule] 26(B)(3)." *Id.* (footnote omitted).

> These other documents, like the Fisher report, were apparently prepared in anticipation of prior litigation. However, our holding that the protections of [Trial Rule] 26(B)(4) apply only to experts retained in anticipation of pending litigation does not mandate a similar interpretation with regard to [Trial Rule] 26(B)(3). As noted, the exceptions to the general discovery provision of [Trial Rule] 26(B)(1) which are provided for work product and experts are distinct. Restrictions upon the discovery of materials from experts imposed by 26(B)(4) are designed to guard against the danger that one party will unfairly use another party's experts to prepare his case. Thus, the concern underlying the exception is the maintenance of fairness in a particular adversarial proceeding. In contrast, the rationale supporting the work-product doctrine goes to the heart of the attorney-client relationship.
>
> > "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely on request and use them against his client. The work product privilege would be attenuated if it

> were limited to documents that were prepared in the case for which discovery is sought. What is needed, if we are to remain faithful to the articulated policies of *Hickman* [*v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)], is a perpetual protection for work product, one that extends beyond the termination of the litigation for which the documents were prepared. Any less protection would generate the very evils that the Court in *Hickman* attempted to avoid." *In re Murphy* [560 F.2d 326, 334 (8th Cir.1977) ].
>
> The rationale of the *Murphy* court is persuasive. Accordingly, we hold that the work-product doctrine applies to items prepared in anticipation of prior litigation. Our holding is in accord with the majority of federal cases which have considered the question.
>
> We recognize the apparent inconsistency between our holding that 26(B)(3) applies to prior litigation and our holding that 26(B)(4) does not. However, we must reiterate that, despite their presence within the same trial rule, 26(B)(3) and 26(B)(4) are independent exceptions to the general discovery provision. Given the intent of Trial Rule 26(B)(3) and 26(B)(4), it is not logically possible to harmonize the meaning of "in anticipation of litigation" within the two sections.

*Id.* at 61–62 (citations omitted).

The majority contends that the holding in *American Buildings* was "subsequently narrowed" by *Reeves v. Boyd & Sons, Inc.*, 654 N.E.2d 864, and *R.R. Donnelley & Sons Co. v. North Texas Steel Co.*, 752 N.E.2d 112. Op. at 413. I respectfully disagree, in that *Reeves* involved the designation and undesignation of an expert during a single proceeding, and *Donnelley*, as the Plaintiffs correctly observe, "involve[d]

a consulting expert who was hired by a party to a case and whose testimony was used in that very same case after the party that hired the consulting expert was dismissed." Appellees' Br. at 30–31. As such, I believe that *American Buildings,* in addition to being soundly reasoned, remains very much alive and well as binding precedent.[9]

The only potentially significant distinction between *American Buildings* and this case is that White–Rodgers settled the *Glascock* litigation before it designated which of the consultants listed on its privilege log were its "trial experts" and which were its "consultation experts." White–Rodgers reasons that because it never made this designation, it had no "experts" at all for purposes of *American Buildings.* I find this reasoning specious, as did the trial court:

> [Y]our suggestion, it's certainly an easy one, that until the point you have to file and designate expert witnesses you don't ever—that they are totally protected forever and ever, and that's a pretty—that would be a pretty easy standard. And if that were the standard I think that's what the cases would all say because that would be such an easy default. I don't think it serves the purpose of finding the truth in subsequent cases, and I think if there are facts and truth known to White–Rodgers about this valve or a valve that potentially is the same or sufficiently similar to be relevant to this case, then it should—it's fair that the plaintiffs have that information.

Appellee's App. at 246. In short, I find White–Rodgers's failure to label its *Glascock* experts to be a distinction without a difference as far as *American Buildings* is concerned.

I also find the majority's concerns about the consequences of following *American Buildings* to be unwarranted. Again, that case has been on the books for nearly twenty-five years, and it does not seem to have adversely affected the willingness of parties to consult with experts or settle litigation as expeditiously as possible. With the possible exception of this case, Indiana's trial courts have not been "clogg[ed]" with "unnecessary litigation" as a result of *American Buildings.* Op. at 414. As for the majority's trumpeting of the "principles of fairness of not allowing one party to build its case on the resources and due diligence of another party[,]" *id.,* the Plaintiffs correctly point out that an expert's evaluation from a prior lawsuit "was already paid for in the first lawsuit, and the party that purchased it already has had the opportunity to benefit from it[.]" Appellee's Br. at 33. In my view, the majority's undue emphasis on the economic impact of expert disclosures is based on an outmoded concept of jurisprudence that often valued a party's financial resources more highly than fundamental fairness and the search for truth. As we recently noted in *Sinks v. Caughey,* "The purpose behind discovery and pretrial procedures is to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " 890 N.E.2d 34, 44 n. 9 (Ind.Ct.App.2008) (quoting *U.S. v. Procter & Gamble Co.,* 356 U.S. 677,

**9.** White–Rodgers claims that its failure to comply with the Amended Order was substantially justified based in part on Dean William F. Harvey's criticism of *American Buildings* in his treatise on the Indiana Rules of Trial Procedure. With all due respect to Dean

Harvey, I find it telling that the Indiana Supreme Court has not seen fit to amend Trial Rule 26 or overrule *American Buildings* in response to his commentary in the two decades since that case was decided.

682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). The modern discovery process is a balance weighted more heavily in favor of disclosure, and I believe that the mere economic value of expert materials—especially from terminated litigation—is an insufficient justification for nondisclosure.

In sum, I would hold that the trial court did not abuse its discretion in imposing sanctions on White–Rodgers, and I would grant the Plaintiffs' request for expenses for defending the order for sanctions on appeal. *See Georgetown Steel Corp.*, 519 N.E.2d at 577.[10]

10. White–Rodgers cites *Trost–Steffen v. Steffen*, 772 N.E.2d 500 (Ind.Ct.App.2002), *trans. denied*, for the proposition that appellate expenses are unwarranted, noting that another panel of this Court "upheld a trial court's discovery sanction but found appellate attorney fees improper because the appeal was not 'replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.' " Appellee's Br. at 22 (quoting *Trost–Steffen*, 772 N.E.2d at 514) (emphasis in Appellee's Br. omitted). I find that case inapposite, however, because the appellant challenged several aspects of the parties' dissolution decree in addition to a discovery sanction.